OPINION
Ronald Smith, Jr. is appealing the judgment of the Montgomery County Common Pleas Court finding him guilty of two counts of domestic violence in violation of R.C. 2919.25.
On May 12, 2000, Tyelisha Ross (hereinafter "Tyelisha") was living with Ronald Smith and their two month old baby daughter. At approximately 4:00 p.m., Betty Ross (hereinafter "Ms. Ross"), Tyelisha's mother, came over to the home to take Tyelisha and her baby to a carnival at the fairgrounds. Mr. Smith and Tyelisha were arguing because Mr. Smith did not want Tyelisha and the baby to go to the carnival with Ms. Ross. Angry, Mr. Smith threatened to move out and collected his belongings from throughout the home and brought them to the door. Continuing to argue angrily, Mr. Smith stated to Tyelisha, "if I had a gun, ain't no tellin' what I'd do." During this time, Tyelisha was sitting on the couch placing a perm in Ms. Ross's hair. Mr. Smith approached Tyelisha on the couch and swung his fist to hit her, but she was able to kick him away. At this point, Ms. Ross rose and walked to the back door in the kitchen and yelled for a neighbor to call the police. Tyelisha, who was holding her baby, followed her mother into the kitchen. Immediately after Ms. Ross yelled to the neighbors, Mr. Smith drew back his closed left fist and struck Tyelisha on the side of the face. However, Mr. Smith's blow only grazed Tyelisha and instead made contact with their baby she was holding in her arms. Ms. Ross had turned from the door just in time to see Mr. Smith strike Tyelisha and their baby. Ms. Ross attempted to obtain a knife but could not find one and instead chased Mr. Smith from the home. Ms. Ross then ran to a police station a block away. Ms. Ross and Tyelisha took the baby to the hospital, where the police met them. Fortunately, Tyelisha and her baby suffered no physical injury from the blow.
Three months later, on August 7, 2000, Tyelisha was outside of her aunt's house holding her baby talking with her aunt, Ms. Richardson, and her aunt's neighbor, Ms. Varisco. Mr. Smith approached Tyelisha and asked her to come around the corner of a building with him so that they could talk. Once behind the building, Mr. Smith and Tyelisha began arguing and Mr. Smith smacked her in the face. Suspicious, Ms. Richardson went around the building after Tyelisha and saw that she was visibly upset and crying. Tyelisha then accompanied Ms. Richardson back to Ms. Varisco's home. Mr. Smith followed them. Ms. Richardson went into the home to call the police while Ms. Varisco remained on the porch with Tyelisha, who was still holding her baby, and Mr. Smith. Through the storm door Ms. Richardson watched as Mr. Smith threw juice on Tyelisha and then smacked her in the face again. Mr. Smith then rode away on his bicycle. When the police arrived, Tyelisha's right cheek was swollen. Mr. Smith denied striking Tyelisha on either occasion.
On September 18, 2000, Mr. Smith was indicted by the State of Ohio (hereinafter "State") on two counts of domestic violence, in violation of R.C. 2919.25(A). A jury trial was held on October 30 and 31, 2000 and Mr. Smith was found guilty as charged. On December 11, 2000, Mr. Smith was sentenced to incarceration for two twelve month terms, to be served consecutively. Mr. Smith filed this timely appeal on December 29, 2000.
Mr. Smith raises the following assignments of error:
 1. THE LOWER COURT ERRED BY PERMITTING THE ADMISSION OF IMPEACHMENT EVIDENCE TO BE ADMITTED AS SUBSTANTIVE EVIDENCE AND CONSIDERED BY THE JURY IN ITS DELIBERATION.
 2. THE LOWER COURT ERRED BY NOT GRANTING DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AS THERE WAS INSUFFICIENT PROOF OF PRIOR CONVICTION TO SUSTAIN THE STATE'S BURDEN.
 3. THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT.
Appellant's first assignment of error:
Mr. Smith asserts that the trial court committed reversible error in admitting the prior written statements of Tyelisha and her mother, Ms. Ross, at the request of Mr. Smith's attorney who had used these statements to attack the credibility of these two witnesses. We disagree.
Whether relevant evidence is admitted or excluded is within the sound discretion of the trial court. State v. Lyles (1989), 42 Ohio St.3d 98,99. An appellate court will only reverse an evidentiary determination of a trial court when the court clearly abuses its discretion which materially prejudices the defendant. Id. at 99. An abuse of discretion amounts to more than a mere error of law but rather connotes an attitude on the part of the trial court which is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169. Further, it is well settled Ohio law that: "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State ex rel Bitter v. Missig (1995),72 Ohio St.3d 249, 254. This "invited error" doctrine prohibits a party from obtaining a reversal of a lower court's decision based upon an error the party caused to occur. Id.
Mr. Smith argues in his brief that the trial court erred in permitting his attorney to admit into evidence the prior written inconsistent statements of Tyelisha and Ms. Ross. Mr. Smith's trial counsel used the written statements to try to impeach the testimony of the witnesses and attack their credibility. Mr. Smith's trial counsel then moved for the admission of the documents. In its brief, the State concedes that not all of the requirements for laying a proper foundation to admit evidence were met with respect to the prior written statements of Ms. Ross and Tyelisha. However, it was Mr. Smith's attorney who utilized the statements to impeach the witnesses and then moved for their admission. As a result, he has invited the error. Pursuant to the invited error doctrine, Mr. Smith cannot now take advantage of the error his counsel invited the trial court to make. Therefore, the first assignment of error is without merit and overruled. Appellant's second assignment of error:
 Mr. Smith argues that the trial court erred in overruling his Crim. R. 29 motion for acquittal at the close of the State's case as the State had presented insufficient evidence of his prior conviction which was an element on which it had the burden of proof. We disagree.
Crim. R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
A trial court should deny a Crim. R. 29 motion if the evidence is such that "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401. An appellate court, reviewing a lower court's denial of a Crim. R. 29 motion for acquittal must construe the evidence in a light most favorable to the State. State v. Wolfe (1988), 51 Ohio App.3d 215, 216.
In the instant case, the State had the burden of showing that Mr. Smith was previously convicted of Domestic Violence in order to meet its burden of proof for these convictions to be fifth degree felonies. R.C.2919.25(D); State v. Henderson (1979), 58 Ohio St.2d 171, 173, 12 O.O.3d 171. "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B). This Court stated in State v. Wilson (Oct. 24, 1997), Champaign App. No. 96-CA-22, unreported,:
 [T]here is a four-step process to appellate review of proof for specification of prior convictions. First, an appellate court must determine whether a certified copy of the judgment entry was submitted into evidence. Second, it determines whether there was sufficient additional evidence in the record to support a reasonable person's belief that the party named in the judgment and the accused were the same person. Third, it asks whether, taken as a whole, the judgment entry and the evidence of identity were sufficient to support a reasonable person's belief that the prior conviction was proved beyond a reasonable doubt. Fourth, and finally, the court determines whether the fact-finder's determination of a prior conviction was supported by the weight of the evidence.
Mr. Smith argues that the trial court failed to meet this four step process. We disagree. The State admitted into evidence a copy of the termination entry titled "State of Ohio v. Ronald A. Smith" certified by a Deputy of the Clerk of Court of Dayton Municipal Court as a true and correct copy. State's Exhibit 3 at trial. This document was self-authenticating and met the first requirement. As to the second requirement which addresses the evidence connecting Mr. Smith to the party named in the termination entry, the State presented the testimony of Tyelisha. Tyelisha testified that Mr. Smith had a prior conviction for Domestic Violence. (Tr. 30). She additionally testified that the conviction was in Dayton Municipal Court on December 13, 1999, the date on the termination entry. (Id.) Further, Tyelisha testified that Mr. Smith in this matter was the same Ronald A. Smith on the termination entry for the prior conviction and that her knowledge was based on personal knowledge as she was the victim in the prior action. (Id.) Considering the victim of the prior conviction testified and agreed Mr. Smith's prior conviction was in Dayton Municipal court and on December 13, 199, this evidence was sufficient to support a reasonable person's belief that Ronald A. Smith in the certified copy of the termination entry from the Dayton Municipal Court for a Domestic Violence conviction was Mr. Smith.
As to the third and fourth requirements, the State also met its burden. The certified copy of the termination entry coupled with Tyelisha's, the victim in the prior and current offenses, testimony identifying Mr. Smith as the defendant in the prior conviction was sufficient to support a reasonable person's belief that the prior conviction was proved beyond a reasonable doubt. On the issue of the fourth requirement, whether the jury's determination of a prior conviction was supported by the evidence, the only evidence before the jury on the element of the prior conviction was the certified copy of the termination entry and Tyelisha's testimony identifying Mr. Smith as the defendant in the termination entry. A termination entry for a prior conviction for Domestic Violence with a defendant named "Ronald A. Smith" and the testimony of the victim of the prior conviction stating that Mr. Smith was the defendant in the prior conviction on a particular date in a certain court is competent credible evidence supporting a finding that Mr. Smith had a previous conviction for Domestic Violence. Therefore, we find that the State met the four requirements enumerated in Wilson and met its burden. Mr. Smith's second assignment of error is without merit and overruled.
Appellant's third assignment of error:
Mr. Smith argues that he was rendered ineffective assistance of counsel by his counsel's multiple failures and, as a result, his conviction should be reversed. We disagree.
In order to successfully reverse a trial court's judgment based on ineffective assistance of counsel, the defendant must show his counsel's performance was deficient and resulted in prejudice. Strickland v. Washington (1984), 466 U.S. 668, rehearing denied (1984), 467 U.S. 1267. In order for a counsel's performance to be deficient, the defendant must show that this performance fell below an objective standard of reasonableness. Id. A strong presumption exists that counsel's conduct fell within the wide range of reasonable assistance. Id. However, even if the defendant proves that his counsel's performance was deficient, the trial court's judgment may only be reversed where the defendant demonstrates that a reasonable probability exists that but for counsel's deficiency, the result of the proceedings would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 142, certiorari denied (1990), 497 U.S. 1011.
a. Counsel's failure to subpoena documents and witnesses
Immediately prior to trial, Mr. Smith informed the court that he was unhappy with his counsel because he had failed to subpoena visitation lists from the jail, a preliminary hearing transcript, the doctor who examined Tyelisha and her baby on May 12, 2000, Mr. Smith's previous attorney, and a transcript of Mr. Smith's prior conviction in the municipal court wherein the judge allegedly dismissed Mr. Smith's prior conviction. As to the jail visitation lists, Mr. Smith's counsel did properly subpoena the documents. Additionally, Tyelisha admitted that she had visited Mr. Smith in jail. Therefore, no error occurred. Regarding the preliminary hearing transcript, at trial Mr. Smith's counsel stated that he had informed Mr. Smith that he could request a transcript but then Mr. Smith would have to waive his right to a speedy trial and Mr. Smith had been unwilling to do so. (Tr. 13, 16-17, 18). Additionally, the prosecutor at trial testified that he had received detailed notes from the prosecutor at the preliminary hearing and the notes did not contain any reference to a statement by Tyelisha that "she wouldn't wanna see [Mr. Smith] with * * * another woman or she'd rather see him go to jail," as Mr. Smith alleged she stated. (Tr. 19). The prosecutor adamantly stated that the notes would contain such a statement if one had been made. (Id.) Therefore, even if the transcript had been subpoenaed it would not have aided Mr. Smith's case.
As to failing to subpoena the doctor who examined Tyelisha and her baby on May 12, 2000, Tyelisha admitted that neither she nor her baby sustained any physical injuries. Thus, Mr. Smith was not damaged by failing to have the doctor testify that no physical injuries were sustained.
Regarding the transcript of Mr. Smith's prior conviction in the municipal court, a direct appeal is not the proper procedure for ineffective assistance of counsel claims based on evidence outside of the record. If a defendant's claims of ineffective assistance of counsel are based on facts outside the record, an appellate court cannot evaluate the counsel's performance. State v. Cooperrider (1983), 4 Ohio St.3d 226,228. Here, the transcript of the municipal court proceedings in which the judge allegedly dismissed Mr. Smith's prior conviction are not part of the record. Since on this direct appeal this Court may only review claims of ineffective assistance of counsel based on facts in the record, this Court may not consider Mr. Smith's claims based on his trial counsel's failure to obtain the municipal court transcripts when the transcripts are not part of the record of this case. Thus, Mr. Smith's claims of ineffective assistance of counsel based on his trial counsel's failure to subpoena certain documents and people are without merit and overruled.
b. Counsel's handling of Mr. Smith's prior conviction
Initially, Mr. Smith argues that his trial counsel was deficient in failing to either stipulate to his conviction or alternatively request that the court determine his conviction outside of the presence of the jury. In the instant action, Mr. Smith's prior conviction elevated his offense from a misdemeanor to a felony of the fifth degree. As such, the prior conviction was an essential element of the offense and cannot be bifurcated from the other elements of the subsequent offense. See State v. Ireson (1991), 72 Ohio App.3d 235; State v. Lenoir (Sept. 12, 1997), Montgomery App. No. 15469, unreported, appeal dismissed (1998),81 Ohio St.3d 1415. Further, even if a defendant asks the court to permit him to stipulate to the prior conviction and consider it outside the presence of the jury, the court is not required to grant the defendant's request. Lenoir, supra. Therefore, the trial court likely would not have bifurcated the trial or permitted the conviction to be determined outside of the presence of the jury.
Further, Mr. Smith can not demonstrate a reasonable probability that the outcome of the trial would have been different but for Mr. Smith's trial counsel's statement to the jury or if a motion in limine to prohibit surplus evidence about the conviction had been filed. The counsel's statement to the jury that Mr. Smith had pled guilty to the prior offense was clearly utilized by counsel to assist Mr. Smith by implying that Mr. Smith was innocent in this case because he had refused to enter into a plea bargain. Further, Mr. Smith's trial counsel was aware that the evidence would show these facts as the State intended to admit a certified copy of the termination entry on the prior conviction to the court. The State did in fact admit the certified copy of the termination entry. Therefore any alleged error caused by Mr. Smith's counsel telling the jury that he had pled guilty to the prior conviction was not prejudicial to the defendant as the jury would have received this information regardless.
Likewise, Mr. Smith's trial counsel's failure to file a motion in limine to prevent the admission of surplus evidence on the prior conviction did not alter the outcome of the trial. The State's presentation of evidence did not address any surplus evidence on the prior conviction. The State only asked Tyelisha and the detective who obtained the certified copy enough information to identify Mr. Smith as the defendant in the prior conviction. Thus, as a motion in limine would not have prevented the State from introducing any of the evidence it utilized, counsel's failure to file a motion in limine did not change the outcome of the trial.
Additionally, Mr. Smith asserts that his trial counsel was ineffective by failing to file a motion in limine or request a limiting jury instruction relating to Detective Gross's testimony in which under cross examination he read the disposition on the termination entry for the prior conviction. However, this also did not change the outcome of the trial. Det. Gross's testimony did not assist the State in meeting its burden of proof on the prior conviction or any other element of the offense. Moreover, the evidence presented by the State was more than sufficient to convict Mr. Smith. In addition to the victim's testimony, the State presented the testimony of independent witnesses for each offense. Mr. Smith cannot demonstrate a reasonable probability that Det. Gross's testimony changed the outcome of the trial. Mr. Smith's argument that his trial counsel's failures in relation to his prior conviction amounted to ineffective assistance of counsel is without merit and overruled.
c. Counsel's failure to object
Mr. Smith asserts that his counsel was ineffective for failing to object to certain evidence, including: Tyelisha's testimony about Mr. Smith's prior conviction, Tyelisha's testimony in which she commented on what her mother saw, the testimony on the exchange between Tyelisha and Mr. Smith's previous counsel, the certified copy of the termination entry, Det. Gross's testimony regarding the termination entry, and testimony regarding Mr. Smith's threat to Tyelisha on May 12, 2000.
Initially, Mr. Smith argues that his counsel was ineffective for failing to object on the grounds of hearsay to Tyelisha's testimony that Mr. Smith was the same person as the defendant in the certified copy of the termination entry from the municipal court. Tyelisha testified that she was the victim in the prior conviction and as such her testimony was not based on hearsay but on personal knowledge. Further, Tyelisha did not relate any out of court statements in her testimony about the prior conviction. Likewise, Tyelisha's testimony regarding her mother, Ms. Ross's, observations was not hearsay. Tyelisha was asked by the prosecutor whether she knew if her mother saw Mr. Smith hit her and Tyelisha answered in the affirmative. The prosecutor's question asked for an answer based on Tyelisha's personal knowledge. Tyelisha, Ms. Ross, and Mr. Smith were all in the kitchen in close proximity and Tyelisha could properly testify about what she observed of her mother as well as Mr. Smith. Moreover, Ms. Ross later testified herself that she observed Mr. Smith hit Tyelisha. Therefore, even if Tyelisha's testimony about her mother's observations was improper, Mr. Smith was not prejudiced by the comment because Ms. Ross testified herself.
Additionally, Mr. Smith argues that his counsel erred in failing to object to Tyelisha's testimony regarding the interaction between Tyelisha and Mr. Smith's former attorney, Mr. Koughan. Mr. Smith asserts that the evidentiary value of this testimony is outweighed by unfair prejudice. The testimony regarding the exchange did not prejudice Mr. Smith for it weakened the State's case. The testimony revealed that Tyelisha had recanted her story to Mr. Koughan, which weakened the State's case and impeached Tyelisha's credibility. Furthermore, Mr. Smith informed the court that he was displeased with his trial counsel for his failure to subpoena Mr. Koughan. (Tr. 23-24). Yet, now Mr. Smith complains that his counsel did not object to the testimony about the exchange between Mr. Koughan and Tyelisha. Counsel's failure to object to this testimony did not prejudice Mr. Smith and this argument is without merit.
Similarly, Mr. Smith argues that his trial counsel was ineffective for failing to object to either the certified copy of the termination entry or Det. Gross's testimony regarding the entry. As for the certified copy, Mr. Smith argues that his trial counsel should have objected to the document because the indictment listed the caption of the prior conviction as "City of Dayton v. Ronald A. Smith" while the certified copy was captioned "State of Ohio v. Ronald A. Smith." However, the case number for the prior conviction on the indictment and on the termination entry were the same. Further, the certified copy was self authenticating. Therefore, there was not error in not objecting to the admission of the certified copy of the termination entry. As for Det. Gross's testimony, it was sufficient to present and admit the certified copy of the termination entry. As the copy was certified there was no need for the custodian of records of the Clerk of Courts of Dayton Municipal Court to testify. Mr. Smith's trial counsel was not ineffective for failing to object to the certified copy of the termination entry or Det. Gross's testimony.
Finally, Mr. Smith argues that his counsel was ineffective for failing to file a motion in limine to exclude threats Mr. Smith made to Tyelisha on May 12, 2000. Tyelisha testified that on May 12, 2000 before Mr. Smith struck her he stated to her, "if I had a gun, ain't no tellin' what I'd do." (Tr. 34-35). Additionally, Ms. Ross and Mr. Smith testified that he made this statement. (Tr. 109, 226). In order to meet its burden, the State had to show that Mr. Smith attempted to cause physical harm to a family or household member, in this case Tyelisha. (R.C.2919.25(A), Docket Entry No. 1; 9/18/00 Indictment). However, the testimony presented described that Mr. Smith swung his fist and grazed Tyelisha and hit their baby. Mr. Smith's conduct could be interpreted as an attempt to cause physical harm to either Tyelisha or the baby. Yet, when coupled with Mr. Smith's threat to Tyelisha, it is apparent that the attempt to cause physical harm was directed towards Tyelisha and not the baby. Therefore, Mr. Smith's threat was necessary to the State proving an essential element of the offense, that Tyelisha was the victim. As any prejudice from this evidence was outweighed by its probative value, the trial court would not have likely excluded the evidence. Therefore, Mr. Smith's trial counsel was not deficient because he failed to file a motion in limine. Mr. Smith's argument that his trial counsel was ineffective because he failed to object to various pieces of evidence is without merit and overruled.
d. Counsel moving for the admission of written statements of Tyelisha and Ms. Ross
As mentioned in the first assignment of error, the prior written statements of Tyelisha and Ms. Ross were admitted into evidence by Mr. Smith's trial counsel due to the fact that the prior statements were inconsistent with their testimony at trial. Counsel attacked the witnesses' credibility and attempted to impeach these witness, one of which was the victim in both offenses. The admission of these statements clearly did not prejudice Mr. Smith such that the outcome of the trial would have been different but for the statements' admission. The prior inconsistent statements were damaging to the State by attacking the credibility of its key witnesses and did not aid the State in meeting its burden. Therefore, Mr. Smith cannot demonstrate a reasonable probability that but for the statements' admission the outcome of the trial would have been different.
e. Counsel's Crim R. 29 motion with incorrect applicable law
When the State rested, Mr. Smith's counsel moved for a Crim. R. 29 motion for acquittal, stating that the State had not met its burden "that there's probable cause that Mr. Smith has committed these offenses." (Tr. 190). This is clearly a misstatement. Nothing in the record hints that defense trial counsel was unfamiliar with the law or procedure. Moreover, as we discussed in the second assignment of error, the State presented sufficient evidence to overcome a Crim. R. 29 motion. Therefore, even if Mr. Smith's trial counsel had not made a misstatement, the Crim. R. 29 motion would not have been granted. Thus, no reasonable probability exists that but for counsel's error the outcome of the trial would have been different.
Mr. Smith's third assignment of error is without merit and overruled. The judgment of the trial court is affirmed.
WOLFF, P.J. and FAIN, J., concur.